**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

**HARRY CONNER,**
**sole heir and designated beneficiary**
**of Mary Conner Nelson (deceased),**

        **Plaintiff,**

**v.**                                 **Case 2:11-cv-02476-JTF-cgc**

**UNITED STATES POSTAL SERVICE,**
**UNITED STATES DEPARTMENT OF**
**LABOR OFFICE OF WORKER'S**
**COMPENSATION PROGRAM,**
**METLIFE, INC., and METROPOLITAN**
**LIFE INSURANCE COMPANY.**

        **Defendants.**

---

**REPORT AND RECOMMENDATION ON DEFENDANTS UNITED STATES POSTAL**
**SERVICE AND OFFICE OF WORKERS' COMPENSATION PROGRAM'S MOTION**
**TO DISMISS SECOND AMENDED COMPLAINT, DEFENDANTS METLIFE, INC.**
**AND METROPOLITAN LIFE INSURANCE COMPANY'S MOTION TO DISMISS,**
**PLAINTIFF'S MOTION TO AMEND ADMINISTRATIVE RECORD/MOTION FOR**
**JUDGMENT ON THE PLEADINGS, AND UNITED STATES' OFFICE OF**
**PERSONNEL MANAGEMENT'S MOTION FOR SUMMARY JUDGMENT**

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE EXCESS PAGES**

---

        Before the Court are the following motions: (1) Defendants United States Postal Service

("USPS") and Office of Workers' Compensation Program's ("OWCP") Motion to Dismiss Second

Amended Complaint (Docket Entry "D.E." #95); (2) Defendants MetLife, Inc. and Metropolitan Life

Insurance Company's (collectively "the MetLife Defendants") Motion to Dismiss (D.E. #104);

Plaintiff's Motion to Amend Administrative Record/Motion for Judgment on the Administrative

Pleadings (D.E. #124); the United States Office of Personnel Management's ("OPM") Motion for

Summary Judgment (D.E. #125); and Plaintiff's Motion for Leave to File Excess Pages (D.E. #140).

The instant motions were referred to the United States Magistrate Judge. (D.E. #142).

## I. Background

### A. *Plaintiff's Second Amended Complaint*

On June 13, 2011, Plaintiff filed a pro se Complaint in this Court as beneficiary of his

mother, Mary Conner Nelson's ("Nelson")[1], life insurance policy ("Policy") alleging that various

violations of law resulted in the incorrect payment of her Federal Group Life Insurance ("FEGLI")

proceeds. (D.E. #1). Plaintiff has twice amended his Complaint—on September 22, 2011 (D.E. #4)

("First Amended Complaint") and on July 17, 2012 (D.E. #89) ("Second Amended Complaint").

Plaintiff also filed a Supplemental Complaint on July 17, 2012. (D.E. #90). Plaintiff's Second

Amended Complaint and Supplemental Complaint are the operative pleadings in the instant case.

(July 17, 2012 Order Denying Pl.'s Mot. to Strike and Order Granting Leave to Amend, filed at D.E.

#84, at 4).[2]

Nelson became an "appointed employee" of USPS in March, 1966. (Sec. Am. Compl. ¶ 14)

---

[1] In certain portions of the record, including in some of her personnel files, Nelson is referred to by the name "Mary Wallace Conner," "Mary W. Conner," and other similar variations. With the exception of quoted portions of the record, the Court will refer to decedent as Nelson.

[2] In Plaintiff's Second Amended Complaint, he states as follows: "Although the United States Postal Service can sue and be sued in its own name, the United States of America is named as a defendant in this second amended complaint as the ultimate defendant of which the United States Postal Service is a part. The United States Department of Labor's Office of Worker's Compensation Programs is also wholly owned by the United States Government." (Sec. Am. Compl. ¶ 6). The United States of America has not been separately served, and the United States' Attorneys Office already represents both USPS and OWCP in this action and has filed on behalf of OPM.

Plaintiff alleges that Nelson "was automatically entitled to Basic FEGLI life insurance coverage in an amount equal to her salary, rounded up to the nearest one thousand dollars plus two thousand dollars" pursuant to 5 U.S.C. § 8702. (*Id.* ¶ 14)  On March 26, 1967, Nelson "suffered an accepted on the job injury." (*Id.* ¶ 16)  Plaintiff alleges that, in 1968, following amendments to the Federal Group Life Insurance Act ("FEGLIA"), Nelson "became entitled to elect $10,000.00 in additional A optional insurance coverage," which "could also be increased beyond the $10,000.00 amount to compensate for limitations on Basic insurance coverage until 1998." (*Id.* ¶ 15)  Plaintiff alleges that Nelson "elected FEGLI additional option A" by utilizing FEGLI form SF 176-T.  (*Id.*)

On or about August 18, 1972, Nelson "suffered a recurrence of her accepted injuries." (*Id.* ¶ 16) Plaintiff alleges that Nelson "returned to full duty and pay status" by November 8, 1972 and "received a certified U.S. Postal Service work performance of satisfactory." (*Id.*)  Plaintiff alleges that Nelson received a promotion effective July 21, 1973 per USPS Notice of Personnel Action form PS 50, dated July 19, 1973.  (*Id.*)  Nelson's promotion provided a salary of $10,844.00.  (*Id.*)

Plaintiff alleges that Nelson was reassigned to a different position within USPS by a Notice of Personnel Action form PS 50, dated October 10, 1975.  (*Id.* ¶ 17)  Her reassigned position earned a salary of $14,419.00 annually.  (*Id.*)  On April 2, 1976, Nelson was "involuntarily separated" from USPS "for disability retirement," but the involuntary separation was cancelled on the same day. (*Id.*)  Nelson was thus "returned to the employee full duty and [pay] status at a salary of $15,070.00." (*Id.*)

In January, 1979, Nelson was advised that "because she remained on extended worker's compensation [that] it was no longer required or possible to maintain her as an inactive employee" and "threatened that if she did not file an application for disability retirement [that] she would be

involuntarily removed from the Postal Service's employee rolls and would not be eligible to receive any further benefits until she reached the retirement age" of sixty-two. (*Id.* ¶ 18). Plaintiff alleges that this notice was incorrect and that Nelson received another similar notice in July, 1980. (*Id.*)

On August 19, 1980, USPS sent Nelson a Notice of Removal letter to be effective September 26, 1980. (*Id.* ¶ 19) Plaintiff alleges that Nelson received this Notice of Removal because she "had not signed an application for [Civil Service Retirement System ("CSRS")] disability retirement." (*Id.*) Nelson's salary at the time of her Notice of Removal was $21,139.00. (*Id.*) Nelson timely appealed her Notice of Removal. (*Id.*)

On October 20, 1980, "while under the threat of removal," Nelson signed and USPS filled out a Civil Service Retirement System Act ("CSRSA") application for disability retirement. (*Id.* ¶ 20) "Plaintiff avers that the application was fatally flawed because the Postal Service failed to provide an SF 2806, Individual Retirement Record[,] and SF 2807, Register of Separations and Transfer" and because it "failed to sign the application as responsible agency" as Plaintiff alleges it was legally required to do in order to effectuate a transfer for disability retirement under the CSRSA, 5 U.S.C. § 8337, *et seq.* (*Id.*)

On February 26, 1981, by Notice of Personnel Action form PS 50, USPS's "involuntary removal of plaintiff's mother from its employee rolls was found[] to be unwarranted and the separation was cancelled to be retroactive to the September 26, 1980 removal date." (*Id.* ¶ 21) Nelson was thus returned to "full duty and pay status at level 6, step 12, with an annual salary of $21,763.00." (*Id.*)

Plaintiff avers that, "[u]pon personal knowledge, information and belief, on March 13, 1981, following her return to full duty and pay status," Nelson "signed a FEGLI form, 2817, employee life

insurance election form, where she elected FEGLI Basic, Additional Optional A, B x5 and C life insurance coverage to be effective April 4, 1981." (*Id*. ¶ 22) Plaintiff further avers that, "[u]pon personal knowledge, information and belief, on March 23, 1981, then . . . [USPS] Personnel Clerk, Martha H. Brown [("Brown")], who aided plaintiff's mother in filling out the CSRS retirement application, certified to OPM in support of the retirement application that [Nelson's] verified civil service history at this time was from March 12, 1966 through March 23, 1981, pending the disability retirement application." (*Id*. ¶ 23)

Plaintiff alleges that Brown "further certified to . . . [OPM] per the same information in support of CSRS retirement application form, that [Nelson] was eligible to Continue Regular and Optional life insurance coverage into retirement." (*Id*. ¶¶ 24, 31) Brown inquired at the time of the certification if Nelson "wanted to purchase additional A insurance at .12 per thousand monthly payment," which Nelson "agreed to purchase." (*Id*. ¶ 24) Plaintiff avers that, "[u]pon personal knowledge, information and belief, in May of 1981, plaintiff's mother spoke with Ms. Brown again and inquired concerning increases noticed in deductions from her salary and was told by Ms. Brown that increase was due to life insurance elections being made." (*Id*. ¶ 25) Plaintiff alleges that, when Nelson was "asked if she wanted the deductions to continue," she "answered in the affirmative." (*Id*.)

Plaintiff alleges that, on or about June, 1981, Nelson "suffered another recurrence and entered into the United States Postal Service's OWCP, Chicago Performance Cluster Injury Compensation Program." (*Id*. ¶ 26) Plaintiff alleges that, in July, 1981, Nelson again inquired of Brown "as to why the deductions taken from her wage loss compensation benefits had more than tripled and there was no showing of deductions being withheld for the [FEGLI] optional life

insurance coverage on her monthly benefit statement." (*Id.* ¶ 27) Plaintiff alleges that Brown informed Nelson that "because of the different accounting practices used by the different agencies, (USPS and OWCP), her life insurance coverage was showing up on her monthly benefit statement as over-deductions for the employee's [Federal Employee Health Benefit ("FEHB")] premiums rather than FEGLI optional life insurance that she selected." (*Id.* ¶¶ 28, 37) "Brown further stated that as long as her election document indicated her life insurance selections[,] then her life insurance policy would be intact as long as the premiums were paid." (*Id.* ¶ 28) Plaintiff alleges that, "[f]or over twenty[-]nine years, OWCP made the over deductions for what should have gone for life insurance premiums without forwarding the money to OPM for the purposes intended." (*Id.* ¶ 29) Plaintiff further alleges that "neither the U.S. Postal Service nor the OWCP have denied that such over-deductions were withheld and neither federal agency has sought to refund the over payments." (*Id.*)

On September 23, 1981, USPS "issued a Notice of Approval of Disability Retirement" that reflected that Nelson "had been receiving worker's compensation benefits since August of 1972." (*Id.* ¶ 30) Plaintiff alleges that this Notice was inaccurate. (*Id.*) On October 26, 1981, USPS "issued an Agency Certification of Insurance . . . which inaccurately indicated that her termination date of September 25, 1981, was due to retirement." (*Id.*)

On December 14, 1981, OPM "sought more information with regard to Optional life insurance coverage." (*Id.* ¶ 31) USPS "responded on January 20, 1982, by issuing an Amended Certificate of Insurance Status that . . .stated that as of August 19, 1973, [Nelson's] life insurance terminated because she had been in a non-pay status for twelve months, that she subsequently retired, that her annual Basic Pay Rate at that time was $11,544.00 and that she had not elected any

optional life insurance coverage." (*Id.* ¶ 31)  Plaintiff alleges that this information is inaccurate but was "certified to be true" by Brown.  (*Id.*)

On April 15, 1982, OPM "dismissed the retirement application signed by [Nelson] on October 20, 1980." (*Id.* ¶ 32).  Plaintiff alleges that Nelson "never received notice from the U.S. Postal Service that her life insurance coverage had terminated, never received notice of her right to convert to an individual policy, never received notice of ineligibility and never received notice that her disability retirement claim was dismissed prior to her death" on February 3, 2010.  (*Id.*)  On August 18, 1982, "acting on information furnished by the U.S. Postal Service, OWCP terminated [Nelson's] wage loss compensation, finding that based upon the information supplied by the Postal Service, [Nelson] . . . had refused suitable employment."  (*Id.* ¶ 33)  This termination was later vacated by the Director of OCWP by order dated October 27, 1983.  (*Id.*)  On December 16, 1983, Nelson's "Postal Service Leave Fund compensation was resumed and reinstated, payable back to August 12, 1982." (*Id.* ¶ 34)  Nelson "remained on the Postal Service's inactive employee's rolls on extended compensation until her death on February 3, 2010." (*Id.* ¶ 35)  Plaintiff alleges that "OWCP compensation disbursement records clearly indicate that over-deductions for FEHB premiums were withheld from plaintiff's mother's FECA benefits from July 16, 1981 through February 3, 2010." (*Id.*)[3]  Nelson's salary at the time of her death was $53,487.00 annually.  (*Id.*)

Plaintiff alleges that, following Nelson's death, "the Postal Service initially denied that [she] had ever been employed with the agency and OPM stated that it had no record of [her] ever having drawn an annuity or having ever been transferred to the agency for CSRSA disability retirement and

---

[3]  The acronym "FECA" is not defined in Plaintiff's Second Amended Complaint but appears to refer to the Federal Employees' Compensation Act.  *See*, http://www.dol.gov/compliance/laws/comp-feca.htm.

had no election documents on file electing compensation over annuity." (*Id.* ¶ 36) "On March 3, 2010, in response to a Freedom of Information Act Request from [Plaintiff] who served as his mother's representative, OWCP forwarded a copy of the electronic disbursements records in his mother's OWCP file and initially confirmed the fact that OWCP made the over withholdings from plaintiff's mother's compensation benefits but had forwarded the money to OPM for life insurance premiums." (*Id.* ¶ 37) "OWCP later stated that it made no deductions for life insurance premiums but has never [confirmed] or denied whether it made over-deductions from plaintiff's mother's compensation benefits for Federal Employee Health Benefit premiums." (*Id.*)

In March, 2010, Plaintiff filed a claim with USPS's Tort Claims Center for lost "insurance coverage and other benefits in the amount of 1.5 million dollars." (*Id.* ¶ 38) Plaintiff alleged that USPS's "negligent transmission of inaccurate information and failure to maintain [Nelson's Official Personnel File ("OPF")] within applicable statutory and regulatory record[-]keeping requirement[s]" caused the errors. (*Id.* ¶¶ 12, 38) In June, 2010, "pursuant to a congressional inquiry from the Office of U.S. Congressman Steve Cohen, OPM discovered that [Nelson] had Basic Life Insurance but stated no set amount." (*Id.* ¶ 39) In June, 2010, Plaintiff filed a claim "with MetLife for life insurance proceeds due under his mother's FEGLI policy." (*Id.*)

In July, 2010, MetLife's Office of Federal Employees' Group Life Insurance ("OFEGLI") department, which "adjudicates claims under the FEGLI policy that MetLife issued" to Nelson, "determined only $14,000.00 plus $96.00 in interest was due under the policy issued" to Nelson. (*Id.* ¶ 40) Plaintiff alleges that, "[a]t no time during or since did either OFEGLI or MetLife reveal that it partly relied upon a materially altered FEGLI form 2817, employee election form signed by [Nelson] on March 13, 1981[,] which had been materially altered with time and/or negligence prior

to making a determination of the amount of proceeds due under the policy." (*Id.*)

Plaintiff states that, "[i]nstead of paying out the proceeds of a life insurance policy to beneficiaries, MetLife's practice is to open an account in the name of the beneficiary and provide him or her with a checkbook." (*Id.* ¶ 41) Plaintiff avers that "[nowhere] on any of the checks is there a conspicuous notation that by cashing one of the checks provided, a beneficiary is waiving [his right] to a fair and just adjudication [of] the life insurance proceeds that the beneficiary is entitled under federal law." (*Id.*)

In July, 2010, Plaintiff "sought reconsideration to OPM of the administrative errors committed by the Postal Service's inaccurate employee and salary history . . . ." (*Id.* ¶ 42) Plaintiff alleges that he "requested that the Postal Service correct the administrative errors complained of in this complaint," that he "presented both agencies with substantial evidence in the form of their own documents provided to plaintiff pursuant to FOIA requests," and that "both OPM and the Postal Service have issued Final Decisions upholding the Postal Service's inaccurate employee and pay status information regarding [Nelson's] employment with the agency and have failed to even consider its own documents provided to plaintiff by the agencies themselves." (*Id.*)

Plaintiff's Second Amended Complaint alleges five causes of action. Count I alleges that USPS breached its "duty to ensure that its dissemination of employee information was accurate, complete, relevant and timely" under FEGLIA by providing an inaccurate Agency Certification of Life Insurance Status to OPM. (*Id.* ¶¶ 47-50) Count I asserts that USPS's failures have deprived Plaintiff of $42,000.00 in Basic FEGLI life insurance plus interest. (*Id.* ¶ 50)

Count II alleges that USPS breached its duty under FEGLIA by failing to maintain and properly process Nelson's personnel files and employee election documents, which resulted in a loss

of an additional $290,000.00 plus interest in FEGLI optional life insurance proceeds. (*Id*. ¶¶ 52-56)

Count III alleges that USPS negligently failed to "cause issuance of" Nelson's life insurance, which resulted in lost FEGLI life insurance proceeds. (*Id*. ¶¶ 57-62) Plaintiff alleges that, due to USPS's failures, OWCP improperly made over-deductions for FEHB and/or FECA premiums without sending or reporting the money to OPM as life insurance premiums. (*Id*. ¶ 59) Plaintiff alleges that an average of $90.53 was over-deducted each month and that, if Nelson had known these deductions were not providing the life insurance coverage that she anticipated, "she would have purchased $754,000.00 in additional life insurance coverage." (*Id*. ¶ 62) Plaintiff asserts that he is entitled to a refund of Nelson's overpayments. (*Id*.) Plaintiff further alleges that USPS breached its duties and responsibilities under FEGLIA by failing to provide Nelson with notices regarding her life insurance status and eligibility. (*Id*. ¶ 60).

Count IV repeats certain allegations in the previous counts and continues to allege that USPS negligently failed to procure an enforceable life insurance policy and failed to report Nelson's payment of life insurance premiums for option life insurance benefits to OPM. (*Id*. ¶¶ 63-69).

Count V alleges that "MetLife" committed negligence because it owed a "duty of due care in the handling and review" of Nelson's FEGLI policy, it "knew or reasonably should have known" that Nelson's benefits were incorrectly calculated, that it breached its duty of care, and that it "proximately caused injury to Plaintiff." (*Id*. ¶¶ 71-74) Plaintiff alleges that he "has been hurt and injured in his health, strength, and activity, sustaining injury to his body and shock and injury to his nervouce system and person, all of which injuries have caused, and continue to cause, plaintiff great mental, physical, and nervous pain and suffering," including "some permanent disability." (*Id*. 75)

### B. *Plaintiff's Supplemental Complaint*

On July 17, 2012, Plaintiff additionally filed his Supplemental Complaint seeking judicial review of OPM's November 14, 2011 Final Agency Decision ("FAD") (Supp. Compl. at 1.)[4] Plaintiff contends that USPS's inaccurate certifications on its Agency Certification of Insurance Status on January 20, 1982 resulted in an arbitrary and capricious ruling by OPM. (*Id.* at 2) Plaintiff alleges that OPM "failed to consider . . . credible evidence which was contrary to its findings" regarding Nelson's FEGLIA coverage. (*Id.*)

Specifically, Plaintiff alleges that OFEGLI determined that Nelson was owed $14,000.00 plus $96.00 in interest under the Policy. (*Id.* ¶ 1.) Plaintiff contacted OFEGLI to dispute this determination and was additionally advised to contact OPM. (*Id.* ¶ 2). Plaintiff alleges that, in July of 2010, he contacted OPM and was advised on August 10, 2010 that USPS "had certified to OPM that [Nelson's] . . . pay had ceased with the agency as of August 18, 1972 and that there was no evidence that civil service retirement deductions were withheld from her pay after that date." (*Id.* ¶ 4). OPM advised Plaintiff that he had thirty days to seek reconsideration of its determination. (*Id.* ¶ 5). On August 23, 2010, Plaintiff sought reconsideration of OPM's determination and provided evidence in support of his request. (*Id.* ¶¶ 6-7). Plaintiff alleges that OPM failed to consider his evidence in its final decision and that, as a result, he "has and continues to suffer in his rights as a FEGLI beneficiary under the FEGLIA statutes and federal regulations . . . to a fair and just adjudication of the proceeds due under his deceased mother's FEGLI . . . ." (*Id.* ¶¶ 8-11). Thus, Plaintiff seeks that this Court review OPM's decision under the Administrative Procedures Act, 5 U.S.C. § 702.

---

[4] It does not appear that OPM has been served as a defendant in the instant action; however, the United States Attorneys' Office has responded and filed its own motion on behalf of OPM in its defense of the federal Defendants.

### C. *Proposed Findings of Fact*[5]

Nelson began a career appointment with USPS on March 12, 1966. (OPM's Statement of Undisputed Material Facts ("OPM's Facts"), Exh. 1, CONNER-RF-00000858). On February 27, 1968, Nelson completed an "ELECTION, DECLINATION, OR WAIVER OF LIFE INSURANCE COVERAGE" as part of the FEGLI program. (OPM's Facts, Exh. 2, CONNER-RF-00000786). This form reflects a clear check mark in the box marked "DECLINATION OF OPTIONAL (BUT NOT REGULAR) INSURANCE," which states that Nelson declined the $10,000 additional optional insurance. (*Id.*) Based on this checked box, OPM asserts that Nelson did elect basic coverage but declined optional coverage. (OPM's Facts ¶ 2). This form also shows what appears to be a partially erased or altered mark in the box "ELECTION OF OPTIONAL (IN ADDITION TO REGULAR) INSURANCE" (OPM's Facts, Exh. 2, CONNER-RF-00000786). Plaintiff asserts that whether or not Nelson elected optional coverage is disputed by this form. (Pl.'s Resp. to OPM's Statement of

---

[5] Plaintiff's "Motion for Judgment on the Pleadings" does not contain a Statement of Undisputed Material Fact as required by Local Rule 56.1(a). OPM's Motion for Summary Judgment does contain a Statement of Undisputed Material Facts (D.E. #125-1), and Plaintiff has responded thereto (D.E. #126).

Additionally, Plaintiff's Response to OPM's Statement of Undisputed Material Facts contains extensive arguments regarding OPM's facts rather than citations to facts supporting the alleged dispute. As Plaintiff is required upon a motion for summary judgment to cite "to particular parts of the record" to demonstrate a genuine issue of material fact, Fed. R. Civ. P. 56(c)(1)(A), the Court will not rely upon Plaintiff's unsubstantiated arguments when determining whether a genuine dispute of material fact exists.

Finally, Plaintiff's Response to OPM's Statement of Undisputed Material Facts contains exhibits filed in D.E. #126 as attachments to his Response and exhibits filed in D.E. #127. Certain collective exhibits in D.E. #26 are marked as Exhibit 1, and other collective exhibits in D.E. #27 are marked as Exhibit 1. Other exhibits have multiple exhibit designations on the same document. The Court will refer to all of Plaintiff's exhibits by Bates number to avoid further confusion.

Undisputed Material Facts ("Pl.'s Resp. to OPM's Facts") ¶ 2).

On October 22, 1968, Nelson filed a Designation of Beneficiary form designating Plaintiff as the sole beneficiary of her FEGLI benefits. (OPM's Facts, Exh. 3, CONNER-RF-00000784). OPM asserts that Nelson's Service History reflects that her pay ceased on August 18, 1972 and that she began receiving OWCP benefits on August 21, 1972. (OPM's Facts, Exh. 4, CONNER-RF-00000854-857). Plaintiff contends that Nelson's Service History is "inconsistent" because it "depicts numerous and continuous employee salary, pay and step increases up to and including an April 2, 1976, involuntary separation for disability retirement. . . ." (Pl.'s Resp. to OPM's Facts ¶ 4).[6]

On July 1, 1976, the Civil Service Commission ("CSC") sent a Certification of Insured Employee's Compensation Status to OWCP, which states that CSC is attempting to "determine the eligibility of the employee . . . to retain . . . insurance" under FEGLI and requests all dates that the employee received OWCP benefits. (OPM's Facts, Exh. 5, CONNER-RF-00000930). The document was filled out by an OWCP officer on July 27, 1976 and reflects that Nelson received OWCP benefits from April 1, 1967 until April 23, 1967, from August 2, 1976 to present, and that benefits were to be received "indef." and "continuing." (*Id*.) On another portion of the form, it reflects that Nelson's insurance terminated on April 2, 1976 rather than on August 2, 1976. (*Id*.)[7]

---

[6] Plaintiff further relies upon a March 26, 1981 document, which is not entirely legible but appears to be titled "INFORMATION IN SUPPORT OF CIVIL SERVICE RETIREMENT APPLICATION" completed by Nelson (Pl.'s Resp. to OPM's Facts, CONNER-RF-00000045-46); however, it is not clear to the Court what Plaintiff intends to dispute with this document.

[7] Plaintiff relies upon a document entitled "NOTIFICATION OF PERSONNEL ACTION" that cancelled the April 2, 1976 separation due to disability to dispute the July 27, 1976 form completed by OWCP. (Pl.'s Resp. to OPM's Facts, CONNER-RF-00000203). However, while this document appears to be part of Plaintiff's retirement record, it does not

By letter dated August 31, 1976, the CSC wrote USPS to clarify whether Nelson's twelve months in non-pay status began on April 2, 1976 or August 2, 1976. (OPM's Facts, Exh. 6, CONNER-RF-00000929). In accordance with CSC's request, USPS prepared an Agency Certification of Insurance Status on September 10, 1976 reflecting the "REASON FOR TERMINATING INSURANCE" as "End of 12 months non-pay status" on August 1, 1973 at an annual basic pay rate of $11,544 per year. (OPM's Facts, Exh 7, CONNER-RF-00000609-11).

On October 20, 1980, Nelson completed an Application for Retirement, which stated that she had been receiving OWCP benefits from August 21, 1972 until the present. (OPM's Facts, Exh. 8, CONNER-RF-00000922-923).[8] On October 2, 1981, Plaintiff signed another form in connection with her application for disability retirement, which stated that her "total or partial disability compensation" began on August 19, 1972 and that she is "still drawing . . . disability, presently from OWCP." (OPM's Facts, Exh. 9, CONNER-RF-00000864). Other Service History records indicate that the USPS certified Nelson's pay ceased on August 18, 1972 and that she has been receiving OWCP benefits since August 21, 1972. (OPM's Facts, Exh. 10, CONNER-RF-00000854-859). On October 6, 1981, OPM completed a Notice of Approval of Disability Retirement Application, effective September 25, 1981, stating that Nelson had been on OWCP continuously since August

---

appear to have been before the OPM when it issued its FAD. (OPM's Facts, Vok Declaration (Vok Decl.), filed at D.E. #125-3, ¶ 8). The "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

[8] Plaintiff continues to dispute the information in Nelson's Application for Retirement by continued reference to the September 10, 1976 Notice of Personnel Action that reflected the effective date of April 2, 1976. (Pl.'s Resp., CONNER-RF-00000203). As already noted, *see*, *supra*, n.7, while this document appears to be part of Plaintiff's retirement record, it does not appear to have been before the OPM when it issued its FAD.

21, 1972.  (OPM's Facts, Exh. 11, CONNER-RF-00000807).

On October 26, 1981, USPS completed another Agency Certification of Insurance Status, which indicated that the reason for terminating FEGLI insurance was due to retirement as of September 25, 1981, at which time Nelson's annual basic pay was $19,130.00 (OPM's Facts, Exh. 12, CONNER-RF-00000781); however, this form is marked over with handwritten notes of "VOID" and "ON OWCP SINCE 08-21-72." (*Id.*)  In box number 8, the typed effective date of continuous coverage under FEGLI is marked out and the date March 12, 1966 is handwritten in the box. (*Id.*)  In box number 9, which initially reflected that Nelson had Option A–Standard insurance effective April 4, 1981, the effective date is crossed out with the date 1/25/81 and the phrase "NETCOLI" is written above the box, which OPM asserts means "not eligible to collect insurance." (*Id.* & OPM's Facts ¶ 11).

On December 14, 1981, OPM sent a request for "MORE INFORMATION NEEDED TO DETERMINE GROUP LIFE INSURANCE STATUS" from USPS. (OPM's Facts, Exh. 13, CONNER-RF-00000825).  This request stated that USPS "failed to furnish information regarding Optional Insurance" and instructed USPS to "furnish a copy of all SF2817's in employee's file" and to provide information of "effective of Life Ins." (*Id.*)  On January 15, 1982, OPM again requested more information from USPS to determine Nelson's FEGLI benefits status. (OPM's Facts, Exh. 14, CONNER-RF-00000805).  Box 6 on the request form is checked and states as follows: "Because employee was in a nonpay status for more than 12 months, this reason for terminating insurance should be checked . . . [and the] ending date of the 12-month period should be shown. . . and salary on that date." (*Id.*)  Box 6 instructed USPS to provide an amended SF 2821 form with this information. (*Id.*)  OPM also checked box 8, marked "Other," and included a handwritten note of

"pay ceased 8-18-1972." (*Id.*)

On January 20, 1982, USPS completed an Agency Certification of Insurance Status. (OPM's Facts, CONNER-RF-00000780).[9]   Box 4(e) reflects that the reason for terminating Nelson's insurance was the end of twelve months non-pay status. (*Id.*)  Box 8 reflects that the effective date of continuous coverage under FEGLI was March 12, 1966, and Box 5 reflects that the date of termination was August 19, 1973.[10]  (*Id.*)  Nelson's annual basic pay rate is handwritten as "11,544." (*Id.*)   Boxes 9-11 reflect that Nelson did not have Option A–Standard Insurance, Option B–Additional Insurance, or Option C–Family Insurance on August 19, 1973.  (*Id.*)

On March 11, 2010, Plaintiff sent a letter to OPM requesting Nelson's benefits as her sole beneficiary.  (OPM's Facts, Exh. 16, CONNER-RF-00000760-761).  Plaintiff claimed that Nelson was employed with USPS from 1965 to 2010 and that she was "transferred from the Chicago, Illinois Postal Office System to the Memphis, Tennessee Post Office where she worked in the 70's and 80's before being placed onto the Office of Workman's Compensation rolls." (*Id.*)[11]  On July 20, 2010, OFEGLI issued a Statement of Claim Payment for Life Insurance in the amount of $14,000.00 plus $96.00 in interest.  (OPM's Facts, Exh. 17, CONNER-RF-00000717).  OFEGLI

_____

[9]  Two exhibits to OPM's Statement of Undisputed Material Facts are labeled as Exhibit 14: CONNER-RF-00000805 and CONNER-RF-00000780.  There is no exhibit labeled Exhibit 15. OPM's Statement of Undisputed Material Facts describes CONNER-RF-00000780 as Exhibit 15, and thus, it appears CONNER-RF-00000780 was merely incorrectly marked as Exhibit 14.  To avoid any confusion, the Court will reference this exhibit by its Bates number.

[10]  It appears that the form initially stated another date but was edited to reflect a date of August 19, 1973.  (*Id.*)

[11]  Plaintiff cites CONNER-RF-00000779, 43, 275, 273, 261, 281, 269, 271, 263, 266, 259, 255, 253, 251, and 249.  It is not clear what facts Plaintiff intends to dispute with these documents.  Further, as already stated, *see*, *supra*, n.7, while these document appears to be part of Plaintiff's retirement record, it does not appear with the exception of CONNER-RF-00000779, that these documents were before the OPM when it issued its FAD

16

established a "Total Control Account (Money Market Option)" in Plaintiff's name, which it stated is the manner that it pays FEGLI claims of $5,000 or more. (*Id*.)[12]

On July 25, 2010, Plaintiff sent OPM a letter requesting reconsideration and review of OPM's certification of $14,096.00 in benefits and of information OPM provided in a letter to United States Congressman Steve Cohen on July 7, 2010 after he made an official request on behalf of Plaintiff. (OPM's Facts, Exh. 18, CONNER-RF-00000727-730). On August 5, 2010, Plaintiff submitted an "Amended Request for Review of Agency's Initial Decisions" to OPM. (OPM's Facts, Exh 19, CONNER-RF-00000713-23). Plaintiff stated that he wished to amend his July 25, 2010 request for review of Nelson's benefits. (*Id*. at CONNER-RF-00000713). Plaintiff claimed that Nelson's pay ceased in August of 1972 but that Nelson was "reinstated to work and her actual separation date for the purposes of Worker's Comp was 9/26/1980 at a salary of $18,830.00." (*Id*.) Plaintiff stated that Nelson's "basic life insurance should have been $19,000.00 ($18,830.00 rounded), plus $2,000.00 for a total of $21,000.00 plus interest rather than the $14,000.00 plus interest paid." (*Id*. at CONNER-RF-00000714).

Plaintiff attached several exhibits to his August 5, 2010 request: (1) the July 20, 2010 Statement of Claim Payment for Life Insurance from OFEGLI; (2) a November 22, 1980 Notice of Correction of Individual Retirement Record reflecting cancellation of the September 26, 1980 separation for disability and restoring Nelson to the "rolls" on September 27, 1980; (3) Service

---

[12] Plaintiff's Response to OPM's Statement of Undisputed Material Facts contains several paragraphs between his response to Exhibits 17 and 18 entitled "Basic Life Insurance," "Additional Life Insurance," and "Option A–Standard." (Pl.'s Resp. to OPM's Facts at 9-11). This format does not comply with Local Rule 56.1(b), which sets forth the requirements of a party opposing a motion for summary judgment, and it is not clear to the Court which facts Plaintiff intends to dispute with these sections.

History records, which state that Nelson's pay ceased on August 18, 1972, that she had been on OWCP since August 21, 1972, and with a note "SEPARATION–DISAB" on September 26, 1980; and, (4) a January 18, 1979 letter from USPS to Nelson advising her that she had been on "extended compensation" through OWCP, notifying her that she could not continue to maintain an "inactive employment status," and informing her that she was eligible as a "disabled employee" to "apply for retirement." (*Id*. at CONNER-RF-00000716-723).

On August 20, 2010, OPM sent a letter to Plaintiff in response to his July 25, 2010 letter. (OPM's Facts, Exh. 20, CONNER-RF-00000698). OPM advised Plaintiff that it had not yet issued its "initial decision" regarding Nelson's benefits and that, until such a decision had been provided, he "cannot request reconsideration." (*Id*.) OPM further advised that it had reviewed the information submitted by USPS and determined that the certification of Nelson's benefits under the FEGLI program was correct. (*Id*.) OPM stated that USPS certified to OPM that Nelson's pay ceased as of August 18, 1972 and that "there is no evidence that civil service retirement deductions were withheld from her pay after that date." (*Id*.) OPM stated that "an employee's FEGLI coverage stops on the date of the expiration of a period of 12 months of continuous non-pay status," that Nelson's rate of pay used to determine her rate was $11,544, and that when her pay rate was rounded up to the "next higher thousand, plus $2,000," that Nelson was entitled to $14,000.00 in Basic insurance. (*Id*.) OPM advised that this letter represented OPM's initial decision and that Plaintiff could request reconsideration in accordance with enclosed instructions within thirty days. (*Id*.)

It appears that Nelson requested reconsideration of OPM's initial decision on August 23,

2010. (OPM's Facts, Exh. 22, CONNER-RF-00000447).[13] On November 14, 2011, OPM issued

its FAD on Nelson's FEGLI benefits. (*Id*. at CONNER-RF-00000447-450). The background for

OPM's FAD states as follows:

> The record shows that Mary C. Conner was employed with the United States Postal
> Service (USPS) on March 12, 1966 in a Career Appointment. The USPS certified
> that Ms. Conner's pay ceased on August 18, 1972. She separated for disability on
> April 2, 1976. The USPS cancelled the April 2, 1972 separation for disability.
> Furthermore, the USPS certified that Ms. Conner was on the Office of Worker's
> Compensation Programs (OWCP) rolls since August 21, 1972. She separated from
> the USPS on September 26, 1980, for a disability. The USPS cancelled the
> September 26, 1980, separation for disability and restored Ms. Conner to the rolls on
> September 27, 1980. Effective September 25, 1981, she separated for disability
> retirement.
>
> The USPS certified on the Individual Retirement Records, Standard Form 2806s, that
> retirement deductions were withheld in calendar years 1966 through 1972, which is
> when she was employed with the USPS in a Career Appointment through her pay
> cease date. No retirement deductions were certified as being withheld in calendar
> years 1973 through 1981.
>
> On October 20, 1980, Ms. Conner signed the Application for Retirement, Standard
> Form 2801. She was approved for a disability retirement with an annuity commencing September 26, 1981. Under element law, an annuitant is not entitled to receive both

civil service annuity and compensation benefits for the same period of time. Because she was in

receipt of OWCP compensation benefits on September 26, 1981, the disability annuity was

suspended.

> Ms. Conner died on February 3, 2010. In the initial decision, you were informed that
> an employee's FEGLI coverage stops on the date of expiration of a period of 12
> months of continuous non-pay status. The rate of pay used to determine the amount
> of life insurance was 12 months after her pay ceased. ($11,544.00). The rate of pay
> is rounded up to the next highest thousand, plus $2,000.00 to arrive at the Basic life
> insurance amount ($14,000.00).

(*Id*. at CONNER-RF-00000447).

> OPM's Analysis and Findings in its FAD are as follows:

---

[13] OPM's Statement of Undisputed Material Facts states that Plaintiff's letter is included
in Exhibit 21 (CONNER-RF-00000699-712); however, Exhibit 21 does not contain a letter but
only contains other exhibits.

OPM is charged with the administration of the Civil Service Retirement law and is expected to pay benefits as provided by law. Also, we are obligated under law and regulation to correct any error(s) in payment of benefits. The law/regulations that apply in your case are Section 8706(a) of title 5, United States Code, Section 870.702(a) of title 5, Code of Federal Regulations, and Section 870.202(a)(1) of title 5, Code of Federal Regulations.

. . . .[14]

We find that the Basic life insurance amount of $14,000.00 is correct. The USPS certified Ms. Conner's pay ceased August 18, 1972, and that her separation date was September 25, 1981. In accordance with retirement law cited above, insurance of an employee stops on his separation from the service or 12 months after discontinuance of his pay, whichever is earlier. Because her pay cease date is earlier than her separation date, her Basic life insurance stops 12 months after her pay ceased. Her pay ceased on August 18, 1972, and 12 months thereafter is August 19, 1973. Her basic pay on August 19, 1973, was $11,544.00. The basic pay amount of $11,544.00 rounded to the next highest thousand is $12,000.00, plus $2,000.00 is $14,000.00.

In view of the above, the decision is affirmed.

(*Id.* at CONNER-RF-00000448, 450.) The FAD advised Plaintiff that this constituted the final decision of OPM on life insurance entitlement and that he had the right to appeal the decision to the appropriate Federal district court within thirty calendar days of the date he receives the FAD. (*Id.* at CONNER-RF-00000450).[15]

Mark F. Vok ("Vok"), Chief of the Legal Reconsideration Branch within the Disability, Reconsideration and Appeals Unit of OPM filed a Declaration regarding the agency's review of Plaintiff's claims. (Vok Decl. ¶ 1). Vok stated that OPM is the Federal agency charged with

---

[14] The FAD included in its Analysis and Findings the pertinent provisions of the applicable laws and regulations.

[15] Plaintiff's Response to OPM's Statement of Undisputed Facts regarding Exhibit 22 refers again to Exhibit 1, CONNER-RF-00000779. As stated above, *see*, *supra*, n.10, this document is not contained in Exhibit 1 or any exhibit to Plaintiff's Response.

administration of FEGLIA. (*Id.*) Vok explains the FEGLI program, the OFEGLI department of Metropolitan Life Insurance Company, OPM's regulations of FEGLI, and the administrative process for review. (Vok Decl. ¶¶ 3-5). Vok states that OPM issued its initial decision on August 20, 2010, that Plaintiff requested reconsideration on August 23, 2010, and that OPM issued its FAD on November 14, 2011. (Vok Decl. ¶¶ 6-7). Vok stated that the documents stamped CONNER-RF-00000001 through CONNER-RF00000939 "constitute a true and correct copy" of Nelson's retirement file. (Vok Decl. ¶ 8). Vok stated that the "pages labeled CONNER-RF-00000447 through CONNER-RF-00000936 constitute the complete administrative record that was before the Agency when it made its final decision dated November 14, 2011, which is found at CONNER-RF-00000447-450." (*Id.*) Vok stated that OPM considered the entire administrative record before it before rendering its FAD and communicating it to Plaintiff. (*Id.*)

## II. Legal Standard

### A. *Rule 12(b)(6)*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a claim may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In addressing a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in the light most favorable to plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . .claim is and the grounds upon which it rests." *Id.* (citing *Twombly*, 550 U.S. at 555).

Nonetheless, a complaint must contain sufficient facts "state a claim to relief that is plausible on its face'" to survive a motion to dismiss. *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 US. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Id.* at 678-79.

Pleadings and documents filed by pro se litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)). The basic pleading essentials are not abrogated in pro se cases. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) A pro se complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barnett v. Luttrell*, 414 Fed. Appx. 784, 786 (6th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678) (internal quotations and emphasis omitted). District Courts "have no obligation to act as counsel or paralegal" to pro se litigants. *Pliler v. Ford*, 542 U.S. 225, 231 (2004). District Courts are also not "required to create"

a pro se litigant's claim for him. *Payne v. Secretary of Treasury*, 73 Fed. Appx. 836, 837 (6th Cir. 2003).

### B. Rule 56

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III. Analysis

### A. USPS and OWCP's Motion to Dismiss (D.E. #95)

USPS and OWCP filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. Plaintiff filed his Response (D.E. #140, #141) to USPS and OWCP's Motion to Dismiss on February 1, 2013 following the District Court's Order to Show Cause.[16]

At the outset, the parties appear to dispute the nature of Plaintiff's claims.[17] For purposes of a Motion to Dismiss, the Court must look to the face of Plaintiff's Second Amended Complaint to determine the claims brought. Count I alleges that USPS breached its duties under FEGLIA.

---

[16] Plaintiff's Response additionally contained a Motion for Leave to File Excess Pages. (D.E. #140). Plaintiff asserts that the Federal Defendants were permitted to file a forty-three page Motion to Dismiss, and Plaintiff requests that he likewise be permitted to file a forty-three page Response. Although Plaintiff does not provide a basis for this request other than that he be permitted "the same equal access," Plaintiff's request shall be granted and the Court will consider the already-filed Response in its entirety.

[17] USPS and OWCP's Motion to Dismiss characterizes all of Plaintiff's claims as claims of "negligence in connection with" Nelson's FEGLI coverage. (Mot. to Dismiss at 2).

Count II alleges that USPS failed to properly maintain records in connection with Nelson's FEGLI policy. Count III alleges that USPS was "negligent" and breached its duties under FEGLIA, and that USPS's failures resulted in OWCP's errors. Count IV alleges that USPS committed "negligence" by failing to perform its duties in relation to Nelson's FEGLI policy.

## I.  Count I

With respect to Count I's allegations that USPS breached its "duty to ensure that its dissemination of employee information was accurate, complete, relevant and timely when certifying information in support of its Agency Certification of Life Insurance Status Form" under FEGLIA, the Court must begin by determining whether such allegations fall within the limited consent of the United States to waive sovereign immunity and be sued under FEGLIA pursuant to 5 U.S.C. § 8715.[18]

Although the parties do not cite, and this Court has not located, any Sixth Circuit cases addressing the limited consent provision, other courts have held that the United States has only consented to be sued for a breach of legal duty owed by it under FEGLIA. *Graber v. Metropolitan Life Ins. Co.*, 855 F. Supp. 2d 673, 677 (citing *Metro. Life Ins. Co. v. Atkins*, 225 F.2d 510, 513 (5th Cir. 2000)). Additionally, in the apparent absence of authority from the Sixth Circuit, the *Graber* court agreed with other courts in determining that "the only legal duty imposed on the United States under FEGLIA is to ensure that the correct FEGLI policy is negotiated and issued." 855 F. Supp. 2d at 677-78 (citing cases). The *Graber* court additionally relied upon *Jacobs v. United States*, 794 F. Supp. 509 (S.D.N.Y. 1992), which concluded that the United States is "only liable if it fails . . .

---

[18]  5 U.S.C. § 8715 provides as follows: "The district courts of the United States have original jurisdiction, concurrent with the United States Claims Court, of a civil action or claim against the United States founded on this chapter."

to cause the issuance of the insurance contract in the proper amount." *Id.* at 511 (citing *Grove v. United States*, 170 F. Supp. 176, 177 (E.D.Va. 1959).

In Count I of Plaintiff's Second Amended Complaint, he alleges that USPS's inaccurate Agency Certification of Life Insurance Status Form affected the amount of proceeds payable under the Policy based upon Nelson's pay status. However, Plaintiff has not alleged in Count I that a FEGLI policy was not properly negotiated and issued. In fact, Plaintiff admits that a FEGLI policy was negotiated and issued to Nelson. Further, Plaintiff has not alleged that the Policy was negotiated and issued in an improper amount. Plaintiff's Second Amended Complaint states that Nelson "was automatically entitled to Basic FEGLI life insurance coverage in an amount equal to her salary, rounded up to the nearest one thousand dollars plus two thousand dollars" pursuant to 5 U.S.C. § 8702. There is no allegation in Plaintiff's Second Amended Complaint that Nelson's Policy was not negotiated and issued in this amount.

Instead, Plaintiff's assertion regarding the certification of Nelson's last date in pay status does not pertain to either the negotiation or issuance of her Policy, but to the ultimate calculation of benefits under the properly negotiated and issued Policy. The Sixth Circuit has not held that there is any such duty under FEGLIA, and the *Graber* court, in accordance with the majority of other courts, declined to extend any duties beyond negotiating and issuing the correct FEGLI Policy. Accordingly, it is recommended that Plaintiff's claim for breach of duty under FEGLIA fails to state a claim upon which relief may be granted and that USPS's Motion to Dismiss Count I be GRANTED.

### ii. Count II

With respect to Count II's allegations that USPS failed to properly maintain records in

connection with Nelson's FEGLI policy and her optional insurance elections, Plaintiff's claims are less clear that Count I, as they do not specifically allege a breach of duty under FEGLIA or even mention FEGLIA. However, upon review of the substance of the allegations, Plaintiff appears to again be asserting a breach of duty under FEGLIA due to USPS's allegedly inappropriate maintenance of Nelson's election documents and personnel files with respect to her FEGLI benefits. Specifically, Plaintiff states that her signature for Basic insurance is "partially visible"; that her signature for optional insurance A is "barely visible"; that her signature for optional insurance B is "totally erased and only smudges remain; that where she elected an option for coverage in the amount of five times her pay, "only a line remains of the mark she checked in the box"; and, that her signature for optional insurance C for her family only consists of "smudges." (Sec. Am. Compl. ¶ 54).

Unlike Count I, Plaintiff has alleged in Count II that USPS's failures have resulted in insurance coverage in the improper amount. Plaintiff's allegations also extend to the maintenance of the records to prove or disprove the proper coverage, which is not a duty that has been extended under FEGLIA, but the actual negotiation and issuance of the proper amount of insurance is actionable under FEGLIA. As already stated, courts have held that sovereign immunity is waived under FEGLIA when insurance is not negotiated and issued in the proper amount. Here, Plaintiff's Second Amended Complaint alleges that optional coverage was not properly negotiated and issued and that this failure resulted in a loss of $290,000 in optional FEGLI proceeds. Accordingly, it is recommended that Plaintiff's claim for breach of duty under FEGLIA states a claim upon which relief may be granted and that USPS's Motion to Dismiss Count II of Plaintiff's Second Amended Complaint be DENIED.

### iii. Count III

With respect to Count III's allegations that USPS was "negligent," that USPS breached its duties under FEGLIA, and that USPS's failures resulted in OWCP's errors, it is crucial to note at the outset that Plaintiff has not alleged any negligence or breach of duties under FEGLIA as to OWCP. Instead, Plaintiff's Complaint merely states that USPS's failures caused OWCP to "improperly make over-deductions." Accordingly, it is recommended that any purported claim against OWCP be dismissed for failure to state a claim upon which relief may be granted.

As to Count III's allegations against USPS that it breached its duties under FEGLIA, Plaintiff again claims that Brown failed to "ensure that the proper application and information was transmitted to purchase the additional insurance agreed upon as part of the agency's responsibilities under FEGLIA to process life insurance elections, maintaining life insurance records, withholding premiums from pay and sending and reporting withholdings and contributions to OPM." Like Count II, this allegation goes to USPS's duty to negotiate and issue insurance in the proper amount, and a breach of this duty is actionable under FEGLIA. Accordingly, it is recommended that Plaintiff's claim for breach of duty under FEGLIA states a claim upon which relief may be granted and that USPS's Motion to Dismiss Count III of Plaintiff's Second Amended Complaint regarding the duty under FEGLIA to negotiate and obtain the proper policy be DENIED.

As to Count III's allegations against USPS that it breached its duties under FEGLIA by failing to provide Nelson with "notice of the termination of life insurance coverage, notice of the right to convert all or part of her FEGLI life insurance coverage to an individual policy and notice of any life insurance eligibility," this does not fall within the only legal duty established under FEGLIA to negotiate and issue insurance in the proper amount. Other courts have explicitly held

that there is no waiver of sovereign immunity under FEGLIA and thus no subject matter jurisdiction when the claims arise from alleged breaches of "failure to inform" the participant of certain rights regarding their insurance options. *See Meehan v. U.S. Postal Service*, 792 F. Supp. 18, 20 (E.D.N.Y. 1992); *Nancy Arce Laporte v. United States of America*, No. 09-CV-7247 (KMK), 2011 WL 3678872, at *3-*7 (S.D.N.Y. Aug. 19, 2011). Accordingly, it is recommended that USPS's Motion to Dismiss Count III of Plaintiff's Second Amended Complaint regarding the duty under FEGLIA to provide various notices to Nelson be GRANTED.

In addition to what appear to be allegations under FEGLIA in Count III, Plaintiff's claims that USPS was "negligent" also appear to attempt to invoke the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA"), as Plaintiff's Second Amended Complaint states that he intends to "bring his negligence claims against the United States under the Federal Tort Claims Act." (Sec. Am. Compl. ¶ 12). USPS argues that an FTCA claim is not permissible on several grounds, including that FEGLIA is the exclusive remedy for actions on FEGLI benefits. The Supreme Court has held "[i]n a variety of contexts that a precisely drawn, detailed statute pre-empts more general remedies" and has "consistently held that a narrowly tailored employee compensation scheme pre-empts the more general tort recovery statutes." *Brown v. General Serv. Admin.*, 425 U.S. 820, 834-35 (1976). In FEGLIA, the United States Congress created a such an employee compensation scheme. As other courts have held, when "there is a compensation statute that reasonably and fairly covers a particular group of workers, it presumably is the exclusive remedy to protect that group," and suits under the FTCA are precluded. *Demko v. United States*, 385 U.S. 149, 152 (1966); *see also Premachandra v. United States*, 739 F.2d 392, 394 (8th Cir. 1984); *Alexander v. United States*, 500 F.2d 1, 2-3 (8t Cir. 1974). Accordingly, it is recommended that Plaintiff's claim under the

FTCA fails to state a claim upon which relief may be granted and that USPS's Motion to Dismiss Count III's allegations under the FTCA be GRANTED.

### iv. Count IV

With respect to Count IV's allegations that USPS committed "negligence" by failing to perform its duties in relation to Nelson's FEGLI policy, Plaintiff again claims that USPS failed in its obligations as "agent/broker" for Nelson to procure her life insurance benefits with the deductions that it took from her salary and FECA benefits. As already stated with respect to Counts II-III, allegations of failure to negotiate and obtain insurance in the proper amount is sufficient to sustain a claim for breach of a duty under FEGLIA. Accordingly, it is recommended that Plaintiff's claim for breach of duty under FEGLIA states a claim upon which relief may be granted and that USPS's Motion to Dismiss Count IV of Plaintiff's Second Amended Complaint regarding USPS's failure to procure insurance be DENIED. Additionally, for the reasons set forth with respect to Count III, it is further recommended that Plaintiff's claim under the FTCA fails to state a claim upon which relief may be granted and that USPS's Motion to Dismiss Count IV of Plaintiff's Second Amended Complaint's allegations under the FTCA be GRANTED.

### B. Metropolitan Life Insurance Company and MetLife, Inc's Motion to Dismiss (D.E. #104)

The MetLife Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. As an initial matter, MetLife, Inc. asserts that it has been improperly named as a defendant and that, while Plaintiff's Second Amended Complaint summarily states that it "brings claims against OFEGLI, MetLife and Metropolitan Life Insurance Company," Count V of Plaintiff's Second Amended Complaint contains no claims against it.

MetLife, Inc. further argues that, even if Plaintiff had attempted to bring claims against it, it would not be a proper defendant because any lawsuit brought to obtain money due from a FEGLI insurance policy must be brought against the company that issues the police pursuant to 5 C.F.R. § 870.102 and that OFEGLI, the office responsible for paying claims under the FEGLI program, is an administrative unit of Metropolitan Life Insurance Company, not MetLife, Inc.

Upon review, Plaintiff's Second Amended Complaint is not clear as to which of the MetLife Defendants it asserts its claims against. Specifically, Count V of Plaintiff's Second Amended Complaint merely references "MetLife" in its allegations (Sec. Am. Compl. ¶¶ 71-75), but Plaintiff has abbreviated Metropolitan Life Insurance Company as "MetLife" in the Second Amended Complaint, (*Id.* ¶ 7).[19] Thus, while it does appear that MetLife, Inc. may not be a proper party, the Court will in an abundance of caution proceed to consider whether Plaintiff has stated a claim upon which relief may be granted as to either of the MetLife Defendants.

Under Tennessee law, the five elements of a negligence claim are as follows: (1) a duty of care owed by the plaintiff to the defendant; (2) conduct by the defendant that breaches this duty; (3) an injury or loss; (4) a cause-in-fact connection between the plaintiff's injury or loss and the defendant's conduct; and, (5) the existence of proximate or legal cause. *Eskin v. Bartee*, 262 S.W.3d 727, 735 (Tenn. 2008). A duty of care requires an "obligation required by law for the benefit of the

---

[19] MetLife, Inc. additionally argues that it is not a proper Defendant because, pursuant to 5 C.F.R. § 870.102, a lawsuit to obtain money from a FEGLI insurance policy must be brought against the company that issues the policy. (Resp. at 2 n.2). MetLife, Inc. asserts that OFEGLI, the office responsible for paying claims under the FEGLI program, is an administrative unit of Metropolitan Life Insurance Company, not MetLife, Inc. (*Id.*) Plaintiff disputes that MetLife, Inc. is not a proper party because Metropolitan Life Insurance Company is a wholly owned subsidiary of MetLife, Inc. (Reply at 1-2). Upon this motion to dismiss, the Court will only look to the substance of Plaintiff's Second Amended Complaint to determine if he has stated a claim upon which relief may be granted.

particular plaintiff." *Dooley v. Everett*, 805 S.W.2d 380, 384 (Tenn. Ct. App. 1980) (citing 57 A Am. Jur. 2d *Negligence* §§ 84, 85 (1989). "Professionals are judged according to the standard of care required by their profession." *Dooley*, 805 S.W.2d at 384. "Whether there is a duty owed by one person to another is a question of law to be decided by the court." *Id.*

Plaintiff does not clearly allege the basis for the MetLife Defendants' duty of care; however, the MetLife Defendants assert that the only potential duties of care with respect to FEGLI benefits are governed by FEGLIA, 5 U.S.C. § 8701, *et seq.*, the related regulations, 5 C.F.R. Part 870, and the FEGLI Policy at issue. With respect to FEGLIA and its related regulations, Plaintiff has not plead in his Second Amended Complaint, and the Court is not aware of, any statutory basis for OFEGLI to be required to independently investigate whether the certifications by the federal agencies are correct. With respect to the FEGLI Policy, the "determination by the Policyholder of the following shall be conclusive": (1) the "classification of any person as being within the definition of the term "Employee"; (2) the "fact and date of (I) separation of an Employee from the service, (ii) a pay status or non-pay status of an Employee, and (iii) cessation of an Employee's classification as an Employee; and, (3) the "'annual compensation' of any Employee as of any date." (FEGLI Policy, Section 13, filed at D.E. #74-2 at 8 & #75-3 at 5). The FEGLI policy states that the Policyholder is the "United States Civil Service Commission." (FEGLI Policy, D.E. #74-2 at 3). Accordingly, the FEGLI Policy requires OFEGLI to conclusively accept such information as provided and certified by the Policyholder and does not provide OFEGLI any authority to independently investigate these determinations. Other courts have likewise determined that Section 13 of the FEGLI Policy provides OPM "the sole authority to determine whether or not a particular individual is insured under the Policy." *See*, *e.g.*, *Headley v. Metropolitan Life Ins. Co.*, No. 98 Civ.

5929(DLC), 2000 WL 987863, at *3 (S.D.N.Y. July 18, 2000).

Further, the FEGLI Policy requires payment of life insurance proceeds as follows: "Upon receipt by the Office of satisfactory proof, in writing, that any Employee shall have died while insured hereunder, the Office shall pay, subject to the terms hereof, the amount of Life Insurance, if any, in force hereunder on account of such Employee in accordance with Section 4 hereof, at the date of his death." (FEGLI Policy, Section 5(A), filed at D.E. #74-2 at 5). Thus, OFEGLI is required to pay the amount of life insurance as conclusively determined by the Policyholder upon the insured employee's death.

Accordingly, pursuant to FEGLIA, the related regulations, and the FEGLI Policy, OFEGLI was required to accept the conclusive determinations as to Nelson's status and pay the benefits as such. Plaintiff's Second Amended Complaint alleges that OFEGLI complied with these requirements. Specifically, Plaintiff alleges that USPS issued an Amended Certificate of Insurance Status on January 20, 1082 that provided that Nelson's life insurance terminated because she had been in non-pay status for twelve months and that her annual pay at that time was $11,544.00. (Sec. Am. Compl. ¶ 31 & Am. Cert. of Ins. Status, filed at D.E. #4-4, at 28). The Amended Certificate of Insurance reflected that Nelson did not have Option A–Standard Insurance, Option B–Additional Insurance, or Option C–Family Insurance. (Am. Cert. of Ins. Status at 28). Thus, as Plaintiff alleges, she was entitled to Basic FEGLI life insurance coverage in the amount equal to her salary, rounded up to the nearest one thousand dollars plus two thousand dollars pursuant to 5 U.S.C. § 8702. (Sec. Am. Compl. ¶ 14). As Plaintiff admits, OFEGLI paid FEGLI benefits to Plaintiff in the amount of $14,000 plus $96.00 in interest. (*Id*. ¶ 40). Thus, Plaintiff's Second Amended Complaint admits that OFEGLI paid the amount of life insurance certified to be owed to Plaintiff. While

33

Plaintiff's Response continues to argue that the MetLife Defendants should have been aware of additional benefits owed,[20] Plaintiff fails to allege at any point that the Policyholder certified any such benefits. Accordingly, it is recommended that Plaintiff has failed to state a claim for negligence against the MetLife Defendants and that the MetLife Defendants' Motion to Dismiss (D.E. #104) be granted.

### C.  Plaintiff's Motion to Amend Administrative Record/Motion for Judgment on the Administrative Pleadings (D.E. #124) and Defendant's Motion for Summary Judgment (D.E. #125)

On October 15, 2012, Plaintiff filed a "Motion to Amend Administrative Record/Motion for Judgment on the Administrative Pleadings." (D.E. #124). On July 17, 2013, the Magistrate Judge held a hearing on this motion, and the request to amend was withdrawn at that time. The United States was ordered to respond to Plaintiff's request for judgment on the pleadings within two weeks, and the United States, on behalf of OPM, filed its response on July 31, 2013. (D.E. #146). Additionally, on October 26, 2012, OPM filed its own Motion for Summary Judgment. (D.E. #125). Both Plaintiff's "Motion for Judgment on the Pleadings" and Defendant's Motion for Summary Judgment seek summary judgment on the Supplemental Complaint, which seeks judicial review of OPM's November 14, 2011 FAD.

---

[20]  Plaintiff's Response additionally argues that the Metlife Defendants should have relied upon another document, a OPM Certification of Insurance Status of Deceased Annuitant or Compensationer, dated July 12, 2010, which was silent as to Nelson's separation date, annual salary information, and optional life insurance coverage but provided that Nelson had basic life insurance coverage and was in receipt of workers' compensation benefits at the time of her death. (Pl.'s Resp., Exh. 1). However, Plaintiff has not alleged any duty owed by MetLife to conduct any investigation into the certification of Nelson's benefits, including additional review of this document.

Federal district courts review decisions of federal agencies pursuant to Section 706 of the

Administrative Procedure Act ("APA"), 5 U.S.C. § 706, which provides as follows:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> . . . .
>
>> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>>
>>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> . . . .
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a part, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

An agency's action is arbitrary and capricious under the following circumstances:

> the agency has relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency experience.

*Nat'l Cotton Council of America v. U.S. E.P.A.*, 553 F.3d 927, 934 (6th Cir. 2009) (*Motor Vehicle Mffrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The scope of review under the "arbitrary and capricious" standard is narrow, and a court is not to substitute its judgment for that of an agency. *Motor Vehicle Mffrs.*, 463 U.S. at 43. A reviewing court should "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

Upon review, the central fact disputed is Nelson's last day in pay status. OPM reviewed the entire administrative record before it, (Vok Decl. ¶ 8), as required by 5 U.S.C. § 706, and found that her employing agency, USPS, had certified in her Service History Individual Retirement Record that her last day in pay status was August 18, 1972, (CONNER-RF-00000854-859). Other courts have held that OPM is entitled to rely on the employing agency's certification as to an employee's last date in pay status as set forth in the employee's Individual Retirement Record. *Rainone v. Office of Personnel Management*, 249 Fed. Appx. 823, 825 (Fed. Cir. 2007). Further, other documents in the administrative record support the conclusion that Nelson's last day in pay status was on or about August 18, 1972. In applying for disability retirement, Nelson stated that she had been receiving total or partial disability payments since August 19, 1972 and that she had been "still drawing" OWCP benefits since August 19, 1972. (CONNER-RF-00000864). In another portion of her disability retirement application, she stated that her compensation was from August 21, 1972 until present. (CONNER-RF-00000922-923). While other documents in the record evidence that there had been some confusion in Nelson's records, this confusion was clarified with amended documents. (CONNER-RF-00000929, 609-611). Finally, no other documents in the administrative record, including those presented by Plaintiff, clearly evidence that Nelson's last date of pay was any date other than August 18, 1972.

Under FEGLIA, as set forth in the FAD, the "insurance of an employee stops on his separation from the service or 12 months after discontinuance of pay, whichever is earlier." 5 U.S.C. § 8706(a). The FAD concluded that, as Nelson's last date of pay was August 18, 1972, as her separation date was September 25, 1981, and as her pay as of August 18, 1972 was $11,544.00, her FEGLIA benefits were properly paid in the amount of $14,000.00. It is recommended that the

conclusions in the FAD are well-supported and are not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Accordingly, it is recommended that OPM's Motion for Summary Judgment (D.E. #125) be GRANTED and Plaintiff's Motion for Judgment on the Administrative Pleadings (D.E. #124) be DENIED.

## IV. CONCLUSION

For the reasons set forth herein, it is recommended that USPS's Motion to Dismiss Second Amended Complaint (D.E. #95) be GRANTED IN PART AND DENIED IN PART; that OWCP's Motion to Dismiss Second Amended Complaint (D.E. #95) be GRANTED; that MetLife, Inc. and Metropolitan Life Insurance Company's Motion to Dismiss (D.E. #104) be GRANTED; that Plaintiff's Record/Motion for Judgment on the Administrative Pleadings (D.E. #124) be DENIED; and that OPM's Motion for Summary Judgment (D.E. #125) be GRANTED. Plaintiff's Motion for Leave to File Excess Pages (D.E. #140) is GRANTED.


**DATED** this 16thy day of September, 2013.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE


**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**